*DUPLICATE ORIGINAL*　　　　　　　　　　　　　　　O/JS-6

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 15 2008

CENTRAL DISTRICT OF CALIFORNIA
BY　　　　　　　　　　　DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

IN RE QUEST SOFTWARE, INC. ) CASE NO. ~~SACV-06-0751-DOC-(RNBx)~~
DERIVATIVE LITIGATION, ) Related Cases:
) ~~SACV06-763 DOC(RNBx)~~
) SACV07-901 DOC(RNBx)
)
) **O R D E R** GRANTING FINAL
) APPROVAL OF SETTLEMENT
)

Before the Court is Plaintiffs Motion for Preliminary Approval of Settlement (the "Motion"). After considering the moving papers and counsel's statements during a hearing before the Court, the Court hereby GRANTS the Motion and APPROVES the Settlement.

## I. BACKGROUND

The Plaintiffs Phillip Eng and Robert Freedman were shareholders of nominal defendant Quest. They brought suit against Quest and individual, present and former executives of Quest for violations of state and federal law arising out of alleged stock option backdating. On September 8, 2006, the Court issued an order consolidating a number of related federal

derivative lawsuits arising out of the same underlying facts. Plaintiffs filed a consolidated complaint on November 21, 2006.

Meanwhile, Quest employed the Special Committee to investigate its past option granting practices. On January 15, 2007, Quest issued a press release laying out the Special Committee's findings, which included statements about the correct measurement dates of certain options, re-pricing those options, and recovering profits certain executives realized as a result of backdating.

During the course of this litigation, Plaintiffs conducted substantial investigation and discovery including retention of statistical experts to analyze stock option grants, review of all of Quest's reported grants, inspection of Quests public filings, a private investigation, review of company documents and depositions of members of the Special Committee. Plaintiffs, Defendants and the Special Committee also engaged in an eleven-month series of negotiations including two mediation sessions before Justice Howard Wiener and numerous discussions outside of mediation. As a result of these negotiations, the parties reached the present proposed resolution.

The proposed settlement (the "Settlement") includes two components: compensation to Quest for the harm caused by the alleged backdating and prophylactic corporate governance changes. The compensation to Quest includes: a) disgorgement of any net profits obtained by executives through exercising misdated options (subject to certain limited exceptions), resulting in payment of $23.5 million to Quest reflecting the entire economic harm from individuals exercising misdated options; b) repricing all misdated options held by these executives to comply with proper accounting procedures; and c) cancellation of 450,000 vested options held by a former executive. The corporate governance procedures include changes to: a) the way stock option awards are communicated and recorded; b) the election, duties and makeup of Quest's board of directors; c) oversight, duties and makeup of Quest's Compensation Committee; and d) the role and duties of Quest's Audit Committee. Additionally, the settlement would, subject to shareholder approval, modify Quest's stock option plans to place restrictions on options granting practices, including a prohibition on granting options below fair market value on the grant date. Finally, the parties agreed to substantial "confirmatory discovery," which took place after the

parties reached Settlement.

On May 19, 2008, the Court preliminarily approved the Settlement. Subsequently, Quest published a notice approved by the Court in *Investor's Business Daily* and mailed an approved notice to Quest's record owners (the "Notice"). The Notice contained the material terms of the Settlement and procedures for objecting to the Settlement. No shareholder has objected.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23.1 governs settlement of shareholder derivative actions and provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." *See* Fed. R. Civ. P. 23.1(c). Settlements are favored in shareholder derivative litigation, and the Court should avoid substituting its judgment for that of the parties. *See Republic Nat. Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977) (citing *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973)); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). However, "approval cannot be a rubber stamp adoption of what the parties alone agree is fair and reasonable." *Seigal v. Merrick*, 590 F.2d 35, 37-38 (2d Cir. 1978).

In determining whether to approve a settlement in a shareholder derivative suit, the courts employ an test akin to that used for approval of class action settlements under Federal Rule of Civil Procedure 23 . *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995); *In re Imperial Corp. of Am.*, 92 F.3d 1503, 1506 n.5 (9th Cir. 1996). The decision turns on whether the settlement is "fundamentally fair, adequate, and reasonable." *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (collecting cases). The Court's discretion in making this determination is informed by a number of factors, including: a) the strength of plaintiffs' case; b) the risk, expense, complexity, and likely duration of the suit; c) the amount of the settlement; d) the amount of discovery; e) the stage of the proceedings; f) counsel's experience and opinion; g) governmental participation (if any); and h) the reaction of individual plaintiffs. *Officers for Justice*, 788 F.3d 625 (collecting cases). Courts generally consider any number of these factors, among others, with an eye towards determining whether the overall settlement is fundamentally fair. *See In re General*

1 | *Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

## III. DISCUSSION

After considering the argument and evidence before it, and for the following reasons, the Court concludes that the settlement warrants approval and that the requested attorneys' fees are reasonable.

### A. The Settlement Warrants Approval

Where a proposed settlement is the result of legitimate, arms-length negotiations of experienced counsel, and there is no suggestion of collusion, the Settlement is entitled to substantial deference and a presumption of fairness. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). Counsel is better positioned than the Court to protect the interests of clients and to make the necessary compromises during the course of negotiations. *Pacific Enters.*, 47 F.3d at 378. The risk of courts second guessing the product of good faith negotiations, based on hindsight and limited familiarity with the case, is likely to produce fewer settlements and less value.

Here counsel has considerable experience litigating derivative suits. Plaintiffs counsel considers the Settlement "excellent" under the circumstances. Further, there is no evidence of collusion between Plaintiffs and Defendants. Instead, the parties entered the Settlement after months of negotiations and mediation before a well-respected jurist, Justice Wiener. Further, they engaged in substantial discovery and investigation prior to mediation and eventually settlement. This included retention of experts to analyze Quest's financial information, consideration of SEC filings, and review of public and non-public documents. This discovery culminated in significant Mediation Statements submitted to Justice Wiener. Considering the views of esteemed counsel, and the approval of Judge Wiener after considerable efforts, the Court begins its analysis with the presumption that the Settlement warrants approval.

After considering the terms of the Settlement as well as the parties' briefing, the Court concludes that the settlement is abundantly fair, adequately addresses the interests of Quest's shareholders, and confers a substantial benefit on Quest both financially and in terms of corporate governance. Given that not a single shareholder has objected to the settlement, despite

1  the substantial institutional investment at Quest, the Court is confident that the settlement is fair,
2  adequate and reasonable.
3        Although Plaintiffs have a fairly strong case, they are not guaranteed success. Quest has
4  admitted to backdating, but "vigorously dispute[s] the validity of Plaintiffs' claims." Further,
5  the Ninth Circuit has recognized that derivative suits are rarely successful. *Id.* Victory is
6  especially uncertain where, as here, Plaintiffs must argue demand futility. *See Aronson v. Lewis*,
7  473 A.2d 805 (Del. 1984). The demand requirement is certainly a serious obstacle to recovery.
8  Plaintiffs provide numerous examples where claims of demand futility were rejected in
9  backdating cases. Even if Plaintiffs could establish futility, this is only the beginning. They
10 would also have to contend with the possible intervention of Special Litigation Committee
11 (which could delay the suit for a considerable period and would be protected by the Business
12 Judgment Rule), *see* Cal. Corp. Code § 311, dispositive motions and a trial. Any number of
13 events could derail the case and provide no recovery. Further, continued litigation for the
14 significant period required to resolve this case would be extremely costly. It would likely
15 involve substantial discovery, motion work and trial preparation. Esteemed counsel do not
16 engage in such work for free. The suit is also likely to involve expert witnesses who charge as
17 much or more than the lawyers.
18       In recognition of the fair chance of success, the Settlement is very favorable. It provides
19 for substantial monetary recovery and, perhaps more importantly, corporate governance changes.
20 *Maher*, 714 F.2d at 461 ("effects of the suit on th efunctioning of th ecorporation may have a
21 substantially greater impact on it, both long- and short-term, than the dollar amount of any likely
22 judgment . . . .") It also provides for certainty and avoids substantial litigation cost.
23       Perhaps most importantly, Quest's shareholders do not challenge the settlement. *In re*
24 *SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990) ("the reaction of
25 the class to the proffered settlement is perhaps the most significant factor"). A small number of
26 objectors suggests that the settlement is fair. Where there are no objectors, this is strong
27 evidence that the Settlement meets with shareholder approval.
28       Accordingly, the Court hereby APPROVES the settlement.

### B. The Attorneys' Fees are Reasonable

The parties have agreed to provide Plaintiffs' counsel $4.625 million in fees and expenses.

Counsel may recover fees where the Settlement confers a "substantial benefit" on the corporation. The benefit can be monetary, remedial or both. *Boeing Co. v. Van* Gemert, 444 U.S. 472, 478, 100 S. Ct. 745; *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982) (collecting cases). It is clear that a $23.5 million recovery and far-reaching governance reforms are a "substantial benefit."

As with a settlement, a stipulated fee is entitled to considerable deference. Parties should be encouraged to negotiate fees. *Hensley v. Eckerhart*, 461 U.S. 424. 437, 103 S. Ct. 1933 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.") Judicial meddling in stipulated fee agreements is dangerous and discourages settlement. *See Malchman v. Davis*, 761 F.2d 893, 905 and n.5 (2d Cir. 1985). This agreement is entitled further deference because it was reached with the assistance and approval of Justice Wiener.

Further, the Settlement is abundantly reasonable. It represents approximately 19.7% of the total monetary award. This is commensurate with or below amounts awarded in similar cases. *See e.g. In re Activision, Inc. Deriv. Litig.*, CV 06-4771 (C.D. Cal. July 21, 2008) ($10 million in fees for securing governance reforms and $24.3 million); *City of Pontiac General Employees Ret. Sys. v. Langone*, 2006 CV 122302 (Ga. Sup. Ct. June 10, 2008) ($14.5 million in fees based purely on corporate governance); *In re Tenet Healthcare Corp. Deriv. Litig.*, No. 01098905 (Santa Barbara Super. Ct. May 5, 2006) ($5 million in fees for governance and monetary relief). It is significantly lower than the Circuit's guideline for class action suits of 25%. Further, it is based on an award that gives considerable benefits to Quest in terms of both corporate governance and compensation. Finally, it is reasonable in light of Plaintiffs' counsel's substantial costs and effort associated with this case as noted above.

1 | Accordingly, the Court hereby APPROVES the stipulated fees.

## IV. DISPOSITION

For the reasons stated above, the Court concludes that the settlement is fair, adequate and reasonable, and hereby finally APPROVES the settlement. The Court also concludes that the fee award is warranted and reasonable and hereby APPROVES the fee award.

IT IS SO ORDERED.

DATED: August 15, 2008

*David O. Carter*
DAVID O. CARTER
United States District Judge